UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA

    -v.-

NOAH FREEMAN,

        Defendant.

- - - - - - - - - - - - - - - - - x

INFORMATION

11 CRIM 116

## COUNT ONE
(Conspiracy to Commit Securities Fraud and Wire Fraud)

The United States Attorney charges:

### Relevant Entities and Individuals

1. At certain times relevant to this Information, NOAH FREEMAN, the defendant, was employed as a research analyst for a hedge fund based in Boston, Massachusetts ("Hedge Fund A"). In or about 2008, FREEMAN left Hedge Fund A to work as a portfolio manager for a hedge fund based in Stamford, Connecticut ("Hedge Fund B"), where FREEMAN worked until approximately early 2010.

2. At certain times relevant to this Information, a co-conspirator not named as a defendant herein ("CC-1") was the President and Owner of Hedge Fund A and exercised primary authority over Hedge Fund A's trading decisions.

1

## The Insider Trading Scheme

3.   At all times relevant to this Information, NOAH FREEMAN, the defendant, and others known and unknown, conspired to engage in insider trading and wire fraud.  In furtherance of the conspiracy, FREEMAN, and others known and unknown, obtained material, nonpublic information ("Inside Information") from certain co-conspirators (and, in certain cases, exchanged Inside Information with such co-conspirators) who worked at publicly traded companies or hedge funds, for the purpose of executing profitable trades on the basis of the Inside Information.  The Inside Information that FREEMAN received was disclosed or misappropriated in violation of duties of trust and confidence.

4.   As a part of the scheme, NOAH FREEMAN, the defendant, and others known and unknown, obtained Inside Information in a number of ways.  For example, FREEMAN, and others known and unknown, utilized an expert networking firm (the "Firm") to gain and/or facilitate access to employees at public companies ("Firm Consultants") who in turn provided FREEMAN and others with Inside Information.  In addition, FREEMAN, and others known and unknown, obtained Inside Information from independent research consultants who had obtained Inside Information from employees at public companies.  Freeman also received Inside Information from

employees at other hedge funds with whom FREEMAN regularly communicated and shared Inside Information.

5. The Inside Information NOAH FREEMAN, the defendant, obtained included information regarding earnings, revenues, gross margins, sales, and other confidential and material business developments which had been disclosed or misappropriated in violation of: (i) fiduciary and other duties of trust and confidence owed by the Firm Consultants and other public company employees to their employers; (ii) expectations of confidentiality held by the employers of the Firm Consultants and other public company employees who provided the Inside Information; and (iii) written policies of the public companies regarding the safeguarding of Inside Information.

6. On the basis of the Inside Information, NOAH FREEMAN, the defendant, and others known and unknown, executed trades and caused others to execute trades in the securities of numerous public companies, earning millions of dollars in unlawful profits.

### The Conspiracy

7. At various time from in or about 2006 through in or about 2010, in the Southern District of New York and elsewhere, NOAH FREEMAN, the defendant, and others known and unknown, unlawfully, willfully, and knowingly did combine, conspire,

confederate and agree together and with each other to commit offenses against the United States, to wit, securities fraud, in violation of Title 15, United States Code, Sections 78j(b) and 78ff, and Title 17, Code of Federal Regulations, Sections 240.10b-5 and 240.10b5-2, and wire fraud, in violation of Title 18, United States Code, Section 1343.

### Objects of the Conspiracy

### Securities Fraud

8.  It was a part and an object of the conspiracy that NOAH FREEMAN, the defendant, and others known and unknown, unlawfully, willfully and knowingly, directly and indirectly, by the use of the means and instrumentalities of interstate commerce, and of the mails, and of the facilities of national securities exchanges, would and did use and employ, in connection with the purchase and sale of securities, manipulative and deceptive devices and contrivances in violation of Title 17, Code of Federal Regulations, Section 240.10b-5 by: (a) employing devices, schemes and artifices to defraud; (b) making untrue statements of material fact and omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices and courses of business which operated and would operate as a fraud and deceit upon any person, all in violation of Title

15, United States Code, Sections 78j(b) and 78ff, and Title 17, Code of Federal Regulations, Sections 240.10b-5 and 240.10b5-2.

### Wire Fraud

9.  It was further a part and an object of the conspiracy that NOAH FREEMAN, the defendant, and others known and unknown, unlawfully, willfully, and knowingly, having devised and intending to devise a scheme and artifice to defraud and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, namely, a scheme and artifice, among other things, to deprive the employers of certain of the sources of Inside Information of the exclusive use of intangible property, including certain confidential business information, would and did transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, all in violation of Title 18, United States Code, Section 1343.

### Means and Methods of the Conspiracy

10.  Among the means and methods by which NOAH FREEMAN, the defendant, and his co-conspirators would and did carry out the conspiracy were the following:

a. While at Hedge Fund A and Hedge Fund B, FREEMAN obtained Inside Information that had been disclosed or misappropriated by others in violation of duties of trust and confidence.

b. While working at Hedge Fund A, FREEMAN and his co-conspirators provided the Inside Information to CC-1 for the purpose of executing securities transactions in publicly traded companies based, in whole or in part, on Inside Information.

c. While working at Hedge Fund B, FREEMAN and his co-conspirators used the Inside Information to execute securities transactions in publicly traded companies.

### Overt Acts

11. In furtherance of the conspiracy, and to effect the illegal objects thereof, NOAH FREEMAN, the defendant, and his co-conspirators committed the following overt acts, among others, in the Southern District of New York and elsewhere:

a. On or about October 6, 2006, FREEMAN, while employed at Hedge Fund A, had a telephone conversation with a co-conspirator not named herein ("CC-2");

b. On or about October 11, 2006, Hedge Fund A purchased over 600,000 shares of a technology company that trades over the NASDAQ ("Technology Company A") based on Inside Information FREEMAN received from CC-2;

        c.    On or about July 20, 2006, Hedge Fund A purchased over 100,000 shares of a pharmaceutical company ("Pharmaceutical Company A") that trades over the NASDAQ based on Inside Information FREEMAN received from CC-2;

        d.    On or about October 5, 2009, FREEMAN, while employed at Hedge Fund B, had a telephone conversation with a co-conspirator not named herein ("CC-3") to obtain Inside Information regarding a technology company ("Technology Company B") that trades over the New York Stock Exchange.

(Title 18, United States Code, Section 371.)

## COUNT TWO
(Securities Fraud)

The United States Attorney further charges:

12.    The allegations contained in paragraphs 1 through 6 and 10 through 11 are repeated and realleged as though fully set forth herein.

13.    At various times from in or about 2006, through in or about 2010, in the Southern District of New York and elsewhere, NOAH FREEMAN, the defendant, unlawfully, willfully and knowingly, directly and indirectly, by use of the means and instrumentalities of interstate commerce, and of the mails, and of the facilities of national securities exchanges, in connection with the purchase and sale of securities, did use and employ manipulative and deceptive

7

devices and contrivances, in violation of Title 17, Code of Federal Regulations, Section 240.10b-5, by (a) employing devices, schemes and artifices to defraud; (b) making untrue statements of material facts and omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices and courses of business which operated and would operate as a fraud and deceit upon persons, to wit, FREEMAN caused Hedge Fund A and Hedge Fund B to execute securities transactions based in part on Inside Information obtained about publicly traded companies.

(Title 15, United States Code, Sections 78j(b) & 78ff; Title 17, Code of Federal Regulations, Sections 240.10b-5 and 240.10b5-2; and Title 18, United States Code, Section 2.)

### FORFEITURE ALLEGATION

14. As a result of committing one or more of the foregoing securities fraud offenses, in violation of Title 15, United States Code, Sections 78j(b) and 78ff, Title 18, United States Code, Section 371, and Title 17, Code of Federal Regulations, Section 240.10b-5, as alleged in Counts One and Two of this Information, NOAH FREEMAN, the defendant, shall forfeit to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461, all property, real and personal, that constitutes or is

derived from proceeds traceable to the commission of the securities fraud offenses, including but not limited to the following:

### Money Judgment

    a. At least a sum of money in United States currency which was derived from proceeds traceable to the commission of the securities fraud offenses.

### Substitute Assets Provision

    15. If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the forfeitable property described above.

(Title 18, United States Code, Section 981; Title 28, United States Code, Section 2461; Title 18, United States Code, Sections 371 and 2; Title 15, United States Code, Sections 78j(b) and 78ff; and Title 17, Code of Federal Regulations, Sections 240.10b-5 and 240.10b5-2).

*Preet Bharara*
PREET BHARARA
United States Attorney